UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BELEY AND DOUGLAS MONTGOMERY | )<br>)<br>) |
| Plaintiffs, | ) Case No. 12-cv-9714<br>) |
| v. | ) Judge John W. Darrah<br>) |
| CITY OF CHICAGO, | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Beley and Douglas Montgomery filed this lawsuit against Defendant, the City of Chicago, on behalf of themselves and a putative class of sex offenders in Chicago who are required to register as sex offenders and are homeless and were or will be refused registration. (Am. Comp. ¶¶ 1, 46.) Plaintiffs assert four claims against the City: (1) violation of due process (Count I); (2) violation of equal protection (Count II); (3) violation of freedom of association (Count III); and (4) violation of Illinois law (Count IV).

The City has moved to dismiss Plaintiffs' injunctive relief and declaratory judgment claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1). The City has also moved to dismiss Plaintiffs' federal constitutional claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Finally, the City requests that the Court decline to extend supplemental jurisdiction over Plaintiffs' state law claim.

## BACKGROUND

The following facts are drawn from Plaintiffs' First Amended Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiffs Michael Beley and Douglas Montgomery are

convicted sex offenders required to register pursuant to the Illinois Sex Offender Registration Act ("SORA"). (Am. Compl. at ¶¶ 20, 31.) Under SORA, Plaintiffs must, among other things, register in person with the appropriate law enforcement agency where they live; pay an initial registration fee of $100; and provide a photograph and current address. 730 ILCS 150/3(a). A sex offender is also required to report in person to the appropriate law enforcement agency within three days of starting school or changing addresses, places of employment or temporary domicile. 730 ILCS 150/3(b). SORA permits sex offenders without a fixed address to register every seven days, in person, with their local law enforcement agency. (Am. Compl. at ¶14.) Convictions for failure to register under SORA carry certain legal consequences, such as the possibility of serving at least seven days' confinement in a local county jail and a mandatory minimum fine of $500. (Am. Comp. ¶ 9; 730 ILCS 150/10(a)).

Plaintiffs allege the City has a policy and/or practice to refuse to register homeless sex offenders. (Am. Compl. at ¶ 19.) Plaintiffs further allege the City conditions a homeless sex offender's ability to register upon first locating a homeless shelter and acquiring a state issued identification, reflecting the homeless shelter as their permanent address. (*Id*. at ¶ 18.) This policy causes all sex offenders listing a homeless shelter as their "fixed residence" to be in violation of SORA since a homeless shelter merely provides overnight accommodations. (*Id*. at ¶¶ 26-28.)

Plaintiff Montgomery attempted to register as a sex offender with the Chicago Police Department on January 27, 2011, but was told by a police officer that the City was "no longer registering homeless people," but he would be registered if he found a "homeless shelter" and paid the $100 registration fee. (*Id.* at ¶ 35.) Because he was unable to locate a homeless shelter with room that accepted sex offenders, plaintiff Montgomery was unable to register. (*Id*. at ¶

2

36.) Sometime later, Montgomery was arrested and charged with violating the SORA's registration requirements. (*Id.* at ¶ 37.) Montgomery has been incarcerated at the jail since July 14, 2011, awaiting trial for allegedly violating SORA. (*Id*. at ¶ 38.)

Plaintiff Beley attempted to register on November 20, 2012, with the Chicago Police Department, but was refused his right to register because he was homeless. (*Id*. at ¶ 22.) Over the next several weeks, Beley was unable to locate a homeless shelter, was denied registration numerous times by the Chicago Police Department, and was eventually labeled as "noncompliant" by the Illinois State Police. (*Id.* at ¶¶ 23-26.) As a result, Beley's registration period will be automatically extended for a period of ten years from the date of his next registration. (*Id.* at ¶ 29.) Beley was eventually registered by the Chicago Police Department on December 11, 2012, after locating an emergency shelter and showing a police officer his state identification card reflecting the shelter as his address. (*Id*. at ¶¶ 26-28.) Because Beley has been convicted of violating the SORA, he is required to register with the Chicago Police Department every 90 days, assuming he has a fixed residence. (*See id*. at ¶¶ 21-28; 730 ILCS 150/6.)

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present: "(1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought." Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal*, 129 S.Ct. at 1949.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to raise the defense that the plaintiff failed "to state a claim upon which relief can be granted ." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950. A threadbare statement of a claim supported by a conclusory statement is insufficient. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise as a defense, by motion, a federal court's lack of subject-matter jurisdiction. As with a Rule 12(b)(6) motion, the district court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). However, when a defendant challenges subject-matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The nonmoving party must support its allegations with competent proof of jurisdictional facts. *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir.1987). If necessary, a district court may also look beyond the jurisdictional allegations to evidence outside of the pleadings to determine whether federal subject-matter jurisdiction exists. *St. John's*, 502 F.3d at 616.

**ANALYSIS**

*Plaintiffs' Standing for Prospective Relief*

The City first argues that the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction with respect to Plaintiffs' claims for injunctive and declaratory relief. The City concedes that Plaintiffs have standing to assert a claim for past injury. However, the City argues that Plaintiffs have failed to allege an ongoing injury that would satisfy standing for any prospective relief.

Standing is an essential jurisdictional requirement; "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citations omitted). To establish standing, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wisconsin Right to Life State PAC v. Barland*, 664 F.3d 139, 146 (7th Cir. 2011) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180–81 (2000)).

To establish standing for injunctive relief or a declaratory judgment, a party must show a real and immediate threat of injury. Addressing the issue of standing for injunctive relief, the Supreme Court has stated that "[past] exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). The court found that the plaintiffs had to establish "continuing, present adverse effects" and a "real and immediate threat" of future injury to allow

the court to exercise jurisdiction over the plaintiffs' requests for prospective relief. *See Lyons*, 461 U.S. at 102, 105; *Walters v. Edgar*, 163 F.3d 430, 434-35 (7th Cir. 1998) (to obtain prospective relief, a plaintiff must establish a non-trivial probabilistic harm of future injury).

In this case, as conceded by the City, both Plaintiffs have alleged an actual injury in fact that is traceable to the City and for which they seek to redress, sufficient for standing for past injuries. *See Barland*, 664 F.3d at 146-47. However, Plaintiffs have not sufficiently alleged that they are under threat of future harm by the City's alleged policy of not registering homeless sex offenders. Beley was permitted to register with the City and list his address as a homeless shelter and has not provided a reason why he cannot continue to do so in the future. Although Plaintiffs argue in the Response that Beley remains under threat of arrest for violating SORA by registering with a homeless shelter, Plaintiffs have not alleged those facts in the Amended Complaint or otherwise provided proof of those facts. Montgomery, who is currently incarcerated, does not need to register as a sex offender at this time. Plaintiffs argue in their Response that he will be homeless again when he is released from jail and again subject to the threat of arrest for violating SORA if he does not find a shelter. However, Plaintiffs have not alleged those facts in the Amended Complaint or otherwise provided proof of them.

Due to these deficient allegations, Plaintiffs have not carried their burden and established that they are under a "real and immediate threat" of future harm for prospective relief. *See Lyons*, 461 U.S. at 102, 105. Therefore, Plaintiffs have not established they have standing for their claims for injunctive relief or declaratory judgment.

*Plaintiffs' Constitutional Claims*

The City also argues that Plaintiffs have failed to state federal constitutional claims for due process, equal protection or freedom of association. Rather, the City contends that all of Plaintiffs' claims boil down to a state law claim that the City violated SORA.

Due Process

In Count I of their Amended Complaint, Plaintiffs do not specify whether they are asserting a procedural due process claim or a substantive due process claim. Defendant argues that Plaintiffs have failed to state either type of due process claim and that their allegations are really an Illinois state claim for violation of SORA simply repackaged as a federal constitutional claim.

The Fifth Amendment provides both a procedural and substantive due process requirement. The procedural due process requirement focuses on the processes and prohibits the government from depriving an individual of life, liberty or property in an unfair manner. *See Mathews v. Eldridge*, 424 U.S. 319, 350 (1976). The substantive due process component precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights implicit in the concept of ordered liberty. *United States v. Salerno*, 481 U.S. 739, 746 (1987). To state a substantive due process claim, Plaintiffs must allege an underlying life, liberty or property interest that is protectable. *See Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994).

In Count I, Plaintiffs assert that the City's "policies and/or procedures" violate due process rights" because it is "fundamentally unfair to deny a person their right to register as a sex offender"; that there is "no meaningful opportunity for a homeless person to contest" the refusal to register them; and that Plaintiffs are "not given meaningful notice of what the City considers

7

to be 'homeless.'" (Am. Comp. ¶ 39.) Although it appears more likely from their allegations that they are asserting a procedural due process claim, it is unclear that this is truly the case. Plaintiffs' Response brief fares no better. Under the heading "Due Process," Plaintiffs discuss their liberty interest as well as the deficiencies in the procedures to challenge the City's practices and policies; however, Plaintiffs fail to identify or properly delineate between substantive and procedural due process. This jumble of Constitutional law, argument and allegations is not sufficient to put the City on notice of which due process claims Plaintiffs assert.

By the current allegations, Plaintiffs have not provided Defendant sufficient notice of their claim. Consequently, Count I is dismissed without prejudice.

## Equal Protection

In Count II, Plaintiffs assert that the City's policies and/or procedure violate equal protection. (Am. Compl. ¶¶ 40-41.) Plaintiffs have alleged that the "City has treated and does treat people who are homeless and are unable to comply with SORA differently from people who have fixed addresses and therefore are able to comply with SORA," and that Plaintiffs have been subject to intentional discrimination by state actors. (Am. Compl. ¶¶ 40-41.)

The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution prohibits states from "den[ying] any person within its jurisdiction the equal protection of the laws." *See* U.S. Const. amend. XIV. In other words, the Clause "essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Equal protection analysis requires different levels of scrutiny depending on the type of claim asserted:

> Equal protection analysis is divided into three categories: (1) strict scrutiny, which requires that the classification be narrowly tailored to a compelling state interest; (2) intermediate scrutiny, which requires that the classification be substantially related to an important state interest; and (3) rational review, which requires that the classification be rationally related to a legitimate state interest. The first category applies to protected classes - race, alienage, or national origin - or impingement on personal rights guaranteed by the Constitution. The second category applies to "quasi-suspect" classes, such as gender. Finally, the third category applies to all other classifications-under rational review, legislation is presumed to be valid.

*Illinois Bell Telephone Co. v. Vill. of Itasca*, 503 F. Supp. 2d 928 (N.D. Ill. 2007) (citing *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).

As with their Due Process claim, Plaintiffs' Equal Protection claim is muddled and unclear. Plaintiffs have not alleged that homeless people are a protected class so as to trigger heightened scrutiny. *See, e.g., Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (to state a claim for equal protection for racial discrimination, plaintiff must allege that he is a member of a protected class, that he is similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class). Consequently, Plaintiffs' claims are subject to rational relationship scrutiny. *Zambrano v. Reinert*, 291 F.3d 964, 970 (7th Cir. 2002).

In *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992), the Seventh Circuit provided a specific standard in regard to the rational relationship standard and stated that "[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." In that case, the Seventh Circuit upheld the 12(b)(6) dismissal of a complaint where the complaint's allegations supported that there was a rational basis for the defendant city's actions. *Id.* Post-*Wroblewski*, the Seventh Circuit has further explained that "allegations of animus do not overcome the presumption of rationality and the court evaluates those allegations once a

9

plaintiff has pled facts that show the irrationality of the government action in question." *Flying J, Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008) (affirming dismissal of complaint under Rule 12(b)(6) for failure to state a claim); *cf. Illinois Bell Telephone Co.*, 503 F. Supp. 2d at 952 (denying motion to dismiss equal protection claim where "plaintiff sufficiently alleged that defendants did not tailor their distinctions to a legitimate justification").

Here, Plaintiffs have failed to allege that the City has no rational basis for treating homeless people different from non-homeless people, so as to overcome the presumption of rationality. Their conclusory allegations of discriminatory intent are insufficient, by themselves, to state a claim. *See Flying J Inc.*, 549 F.3d at 547. Furthermore, as with their due process claims, Plaintiffs have failed to provide the City with sufficient notice of their equal protection claim. Consequently, Count II is dismissed without prejudice.

## Freedom of Association

In Count III, Plaintiffs assert that the City has violated their freedom of association because the City conditions a person's ability to register upon his or her ability to locate a homeless shelter. (Am. Compl. ¶¶ 42-43.) Plaintiffs contend this condition "violates a person's ability to determine his or her own membership in a group" and that "it punishes a person's individual choice to be homeless." (*Id.*) Plaintiffs' conclusory allegations are, again, insufficient to state a claim.

There are two types of freedom of association protected by the First Amendment of the United States Constitution: freedom of intimate association, which pertains to maintaining certain private relationships; and freedom of expressive association, such as "engaging in protected speech or religious activities." *Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 107 S. Ct. 1940, 1945 (U.S. 1987); *see also Roberts v. United States Jaycees*, 468 U.S. 609, 622

(1984) (expressive association protects the "pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends").  In this case, Plaintiffs do not allege violation of their right to intimate association.  Therefore, the inquiry turns to whether Plaintiffs have stated a claim for violation of expressive association.

To state a claim for expressive association, Plaintiffs must allege they were "engaged in expressive activity," such as taking "a public position on an issue of political, social or cultural importance."  *Kohlman v. Vill. of Midlothian*, 833 F. Supp. 2d 922, 937 (N.D. Ill. 2011) (citing *Boy Scouts of America v. Dale*, 530 U.S. 640, 655 (2000)) (to be entitled to protections of the First Amendment, expressive associations must "engage in expressive activity that could be impaired") and *Christian Legal Society v. Walker*, 453 F.3d 853, 862 (7th Cir. 2006) ("It goes without saying that a group must engage in expressive association in order to avail itself of the First Amendment's protections for expressive association")).  In *Kohlman*, 833 F. Supp. 2d 922, the district court granted summary judgment in favor of the defendant when the plaintiffs, a motorcycle club, failed to show that the club had engaged in any sort of expressive activity that would be protected by the First Amendment.

In this case, Plaintiffs have failed to allege that they have engaged in any kind of protected expressive association; consequently, Plaintiffs have failed to state a claim for freedom of association.  Count III is dismissed without prejudice.

<u>State Law Claim</u>

Because Plaintiffs have failed to state any federal constitutional claims, supplemental jurisdiction will not be exercised over Plaintiffs' state law claim.  Consequently, Count IV is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [24] is granted. Plaintiffs are granted leave to amend their allegations, if they can do so pursuant to Rule 11(b), within thirty days of this Order. The case is continued to August 13, 2013, at 9:30 a.m. for status.

Date: June 27, 2013

JOHN W. DARRAH
United States District Court Judge