# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Michael Beley and Douglas Montgomery, | |
| Plaintiffs, | Case No. 12 C 9714 |
| v. | Judge John Robert Blakey |
| City of Chicago. | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Beley and Douglas Montgomery have sued Defendant City of Chicago, on behalf of themselves and a putative class of sex offenders. Plaintiffs bring four claims against Defendant, asserting that Defendant violated procedural due process (Count I); the equal protection clause (Count II); the freedom of intimate association (Count III); and the Illinois Sex Offender Registration Act ("SORA") (730 ILCS 150) (Count IV).

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant has moved [51] to dismiss all these claims as well as Plaintiffs' request for declaratory and injunctive relief. For the following reasons, Defendant's motion is granted in part and denied in part.

I. **Legal Standard**

Under both Rules 12(b)(1) and 12(b)(6), this Court must construe the Second Amended Complaint [46] (the operative complaint) in the light most favorable to Plaintiffs, accept as true all well-pleaded facts and draw reasonable inferences in

their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted true. *Id.* Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendant's motion under Rule 12(b)(6), the Second Amended Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Turning to Rule 12(b)(1) (which involves Defendant's challenge to Plaintiffs' standing to seek declaratory and injunctive relief), there are two types of Rule 12(b)(1) challenges—factual and facial—and they have a "critical difference." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When a defendant argues that "the plaintiffs' complaints, even if true, were purportedly insufficient to establish injury-in-fact," the challenge is a facial one. *Id.* at 443-44. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 443. Factual challenges, however, lie "where the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *Id.* (internal

quotations omitted). Courts may look beyond the complaint only when a defendant brings a factual attack against jurisdiction, such as here, where Defendant claims that Plaintiffs lacks standing. *Id.*

## II. Background

Plaintiffs are convicted sex offenders who reside in Chicago and are required to register under SORA. [46] ¶¶ 5-6, 16-17. Under SORA, Plaintiffs must (among other things) register in person with the appropriate law enforcement agency where they live (here, the Chicago Police Department); pay an initial $100 registration fee; and provide a photograph and current address. 730 ILCS 150/3(a), 150/3(c)(6). Sex offenders without a fixed address must report weekly in person to their local law enforcement agency. 730 ILCS 150/3(a). Failure to register carries legal consequences, including serving at least seven days in jail and paying a mandatory minimum fine of $500. 730 ILCS 150/10(a).

Plaintiffs allege that Defendant has a policy to refuse to register sex offenders who are homeless despite its obligations to do so under SORA. [46] ¶¶ 3, 8, 15, 21. Plaintiffs describe their two experiences as examples:

On November 20, 2012, Beley, who was then homeless, sought to register with the Chicago Police Department. [46] ¶¶ 6-7. However, the Chicago Police Department refused to register Beley because of its aforementioned policy. *Id.* ¶ 8. As a result, from November 22 to December 11, 2012, Beley was in violation of SORA and that violation was posted on the state police website. *Id.* ¶ 9. On December 11, 2012, Beley was able to register using a temporary address at a

3

homeless shelter. *Id.* ¶¶ 10-13. Nonetheless, on February 19, 2013, a police officer was unable to verify Beley's registration status (presumably Beley was then-registered) and documented that he was in violation of SORA. *Id.* ¶ 14. This mistake apparently has been remedied. *See* [56] at 2-3.

Montgomery raises similar allegations, that is, that he sought to register with the Chicago Police Department but that the Department refused to register Montgomery because he was homeless. [46] ¶¶ 19-21. Because he was unable to register, around July 13, 2011, Montgomery was charged with having violated SORA (after first being arrested for ordinance violations). *Id.* ¶ 23. At the time the First Amended Complaint was filed, Montgomery was in custody awaiting trial on the failure to register ([46] ¶ 24), but later reported that he was found not guilty [97]. This Court understands from the January 30, 2015 Joint Reassignment Status Report [110] and the Illinois Sex Offender Registry that Montgomery is currently in jail.[1]

## III. Analysis

### A. Procedural Due Process (Count I)

Plaintiffs first assert that Defendant violated their procedural due process rights by disregarding the registration scheme for homeless offenders created by SORA. [46] ¶¶ 28, 30; [55] at 5-9.

---

[1] This Court takes judicial notice of the contents of the Illinois Sex Offender Registry—a government webpage accessible at http://www.isp.state.il.us/sor. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006) (taking judicial notice of the Illinois Secretary of State's webpage). This Court last visited the Registry on February 17, 2015.

4

To state a claim for denial of procedural due process, Plaintiffs must establish that: (1) they have suffered a deprivation involving a property or liberty interest and (2) there were inadequate procedures in place to protect Plaintiffs from the deprivation of this interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Leavell v. Illinois Department of Natural Resources,* 600 F.3d 798, 804 (7th Cir. 2010). This Court addresses each factor in turn.

### 1. Deprivation of a Liberty Interest

This case involves a protected liberty interest: a homeless sex offender's protected liberty interest in being able to register. SORA requires a sex offender to register with a municipality once he has resided there for three days. 730 ILCS 150/3(a). Otherwise, the offender has committed a crime and is subject to arrest and serving at least one week in jail. 730 ILCS 150/10(a). A city policy to refuse to register homeless sex offenders thus jeopardizes their significant interest in freedom from liability and incarceration. *See Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006); *Johnson v. City of* Chicago, No. 12 C 8594, 2013 WL 3811545, *9 (N.D. Ill. July 22, 2013).

Two of the plaintiffs in *Johnson* were unable to register because they were indigent and not provided an opportunity by the City of Chicago to seek a fee waiver. 2013 WL 3811545, *9. As a result, they were charged with SORA violations (when subsequently arrested on other charges). *Id.* The Court in *Johnson* first noted the multiple Supreme Court decisions establishing that being free from detention by one's own government is "the most elemental of liberty

5

interests"; and then concluded that exposing homeless sex offenders to liability and incarceration is "precisely the type of situation that requires due process." *Id.* This Court agrees.

### 2. Inadequate Procedures

Turning to the second part of the test, Defendant argues that the availability of pre-deprivation and post-deprivation relief satisfies the procedural due process requirements. [53] at 7-8.

To determine what process is due, this Court must consider: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value of any alternative procedural safeguards; and (3) the government's interest, including the function involved and additional administrative or fiscal burdens that alternate procedural requirements would require. *Mathews*, 424 U.S. at 335; *Schepers v. Indiana Department of Corrections*, 691 F.3d 909, 915 (7th Cir. 2012).

First, as discussed above, homeless sex offenders have a significant, indeed, elemental, liberty interest in avoiding liability and incarceration due to an inability to register. *Hernandez*, 455 F.3d at 777; *Saiger v. City of Chicago*, __ F. Supp. 2d __, 2014 WL 1612691, *3 (N.D. Ill. June 19, 2014); *Derfus v. City of Chicago*, __ F. Supp. 2d __, 2014 WL 2109356, *6 (N.D. Ill. May 20, 2014); *Johnson*, 2013 WL 3811545, *9.

Second, existing procedures for challenging the deprivation here are arguably nonexistent. Neither SORA nor Defendant offers any opportunity to challenge a

refusal to register a sex offender.[2] *Saiger*, 2014 WL 1612691, *3. This is problematic from a due process standpoint, as the Supreme Court has found "a fair opportunity for rebuttal" to be "among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005).

Defendant argues that Plaintiffs can challenge a refusal to register them by suing in state court, via a common law writ of *certiorari*. [53] at 7-8. This Court cannot say as a matter of law that a writ of *certiorari* is sufficient to satisfy due process at this early stage of this case. *See Saiger*, 2014 WL 1612691, *3.

Defendant also contends that Plaintiffs have adequate post-deprivation remedy because they can challenge Defendant's refusal to register them during subsequent criminal proceedings. [53] at 8.

There is significant doubt that such a post-deprivation remedy would be adequate in the present case, where Plaintiffs allege that Defendant had a policy to deny homeless sex offenders the opportunity to register. *See Saiger*, 2014 WL 1612691, *4. The Constitution "usually" requires a hearing before the government deprives a person of liberty. *Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990); *Schepers*, 691 F.3d at 916. Based upon the record, this case does not warrant an exception to the "usual" rule.

---

[2] This Court observes, however, that Defendant appears to have informed another Court last year that it was looking into its practices with regard to registering homeless sex offenders. *See Derfus*, 2014 WL 2109356, *6 n.7. This Court has not yet been apprised of any new practices by the City of Chicago.

An instructive case on both the pre-deprivation and post-deprivation arguments raised by Defendant is *Schepers*. The Seventh Circuit there rejected similar arguments in the context of correcting errors to Indiana's sex offender registry. 691 F.3d at 916. Some offenders were mistakenly classified in the registry, subjecting them to additional requirements and prohibitions. *Id.* at 911. In assessing what process was due, the Seventh Circuit noted that some registrants "can, and have, challenged registry errors in the course of criminal prosecutions for failure to comply with registration requirements." *Id.* at 916. The Court concluded, however, that "due process does not require a person to risk additional criminal conviction as the price of correcting an erroneous listing, especially where a simple procedural fix is available much earlier." *Id.* at 916. It further concluded that pursuing a state writ was disfavored and that the Department of Corrections had given no example of a registrant using a writ to challenge a registrant listing. *Id.* The same is true here.

Third, Defendant certainly has an interest in ensuring timely and cost-effective registration of sex offenders. To that point, Defendant has argued before (although not here) that it is not feasible to provide a pre-deprivation administrative remedy for homeless sex offenders denied the opportunity to register. *See Saiger*, 2014 WL 1612691, *4. But in the present procedural context—a Rule 12(b)(6) motion to dismiss—this Court cannot say that Defendant has established, as a matter of law, the infeasibility or impracticality of a pre-deprivation (or even a quick post-deprivation) administrative remedy. That is

particularly so given the significant weight one must afford to a homeless offender's interest in being free from an improper arrest.

For the foregoing reasons, Defendant's motion to dismiss Count I is denied. In reaching this conclusion, this Court joins the other Courts in this District that have considered motions by the City of Chicago to dismiss due process claims also brought by homeless sex offenders and also asserting that the City has a policy preventing them from registering. *See Saiger*, 2014 WL 1612691, *3-5; *Derfus*, 2014 WL 2109356, *5-6. By comparison, the Plaintiffs cite [91] *Moore v. Chapman* (No. 13 C 6171, DE 49), but the *Moore* case is inapposite. While the Court in *Moore* granted the City of Chicago's motion to dismiss the due process claim, that case did not involve allegations from homeless sex offenders that the City had adopted an unconstitutional policy.

### B.    Equal Protection (Count II)

Plaintiffs allege that Defendant violated their right to equal protection by "distinguishing between homeless and non-homeless sex offenders." [46] ¶ 29. Specifically, Plaintiffs contend that Defendant imposed additional hardship on homeless sex offenders by denying them the ability to register. [46] ¶¶ 8, 21; [55] at 10.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to persons within its jurisdiction the equal protection of its laws. U.S. Const. Amend. XIV. Equal protection violations may arise in a variety of situations. When the government draws a distinction based on an individual's membership in a

9

suspect class or infringes on a fundamental right, its justification for the distinction must satisfy the "strict scrutiny" test to avoid offending the constitution. *See, e.g., Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).

Here, Plaintiffs do not allege membership in a suspect class, nor do they contend that Defendant's actions implicated a fundamental right. *See* [55] at 11. In these circumstances, the challenged classification is reviewed under the "rational basis" test. This requires Plaintiffs to show that Defendant treated them differently from other similarly situated individuals because of their status as homeless sex offenders; and this differential treatment was not rationally related to a legitimate government interest. *See Srail*, 588 F.3d at 943. Plaintiffs meet neither part of this test.

First, the "similarly situated" analysis does not rely on a "precise formula," but "what is clear is that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v. Village of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010) (internal quotation marks omitted). A plaintiff and his comparators must be directly comparable in all material respects. *Racine Charter One, Inc. v. Racine Unified School District,* 424 F.3d 677, 680 (7th Cir. 2005). Although the question of whether a comparator is similarly situated is usually reserved for the finder of fact, when the plaintiff fails to allege facts tending to show the two groups are similarly situated, then dismissal under Rule 12(b)(6) is appropriate. *LaBella Winnetka,* 628 F.3d at 942.

10

Plaintiffs identify non-homeless sex offenders as the group of persons whom they contend are similarly situated to homeless sex offenders like themselves. [46] ¶ 29; [55] at 10. But there are obvious and significant differences between the two groups. Homeless persons are transient and lack a place of permanent accommodation; non-homeless persons have a fixed place of abode. This difference is material when considering a statutory scheme like SORA, which exists "to track the whereabouts of convicted sex offenders." *People v. Wlecke,* 2014 IL App (1st) 112467, ¶¶ 5, 38.

Second, even if the two groups were similarly situated, there is a rational basis for treating homeless sex offenders differently. Sex offenders who regularly change their living quarters present different logistical challenges with respect to tracking their whereabouts. *Saiger*, 2014 WL 1612691, *2; *Derfus*, 2014 WL 2109356, *5.

For the foregoing reasons, Count II is dismissed with prejudice. Here again, this Court joins the other Courts in this District that have considered this very issue and granted the similar motions to dismiss an equal protection claim. *See Saiger*, 2014 WL 1612691, *2-3; *Derfus*, 2014 WL 2109356, *4-5.

**C.     Freedom of Association (Count III)**

Plaintiffs assert that Defendant violated their freedom of association by compelling Beley (and other homeless persons) to live with substantial restriction in order to be registered, that is, living and sleeping daily at one of the few shelters that accept SORA registrants. [46] ¶ 30; [55] at 12-13.

11

Two types of freedom of association are protected by the First Amendment: the freedom of intimate association and the freedom of expressive association. *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013). Plaintiffs do not identify which freedom they claim was violated in their Second Amended Complaint. *See* [46] ¶ 30. But Plaintiffs clarify they are claiming a violation of the freedom of intimate association in their motion papers ([55] at 12)—perhaps because this Court previously rejected Plaintiffs' freedom of expressive association claim in their First Amended Complaint (*see* [45] at 10-11). This Court thus considers the freedom of intimate association only.

The freedom of intimate association is limited to those relationships that presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares … personal aspects of one's life." *Rotary Club of Duarte*, 481 U.S. at 545. While not exclusively limited to familial relationships (such as marriage and child rearing), relationships that attend the creation and sustenance of a family are an appropriate benchmark for whether a relationship qualifies as a protected intimate relationship. *Goodpaster*, 736 F.3d at 1072; *see Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984). To identify intimate associations, courts are directed to consider factors such as size, purpose, selectivity and whether others are excluded. *Rotary Club of Duarte*, 481 U.S. at 546; *Roberts*, 468 U.S. at 620; *Goodpaster*, 736 F.3d at 1072-73.

The flaw in the freedom of intimate association argument here is the failure by Plaintiffs to identify any protected intimate relationship. Far from complaining of interference with the formation of any intimate bonds (such as between a husband and wife or siblings), Plaintiffs allege they are compelled to maintain certain relationships, namely, with certain shelters and other sex offender residents of those shelters. *See* [55] at 11-12.

To be sure, there is a freedom **not** to associate. *Roberts*, 468 U.S. at 623. However, Plaintiffs are still required to establish a protected intimate association, as shown by *Rotary Club of Duarte*. The Supreme Court in that case denied the freedom of intimate association challenge where a Rotary Club member organization allowed women members in contravention to the national organization's by-laws. 481 U.S. at 541-42, 545-47. Analogous to not having to associate with other sex offenders at a homeless shelter, the issue in *Rotary Club of Duarte* in effect was whether the Rotary Club's male members had a right not to associate with women members. *See id.* at 541-43. The Supreme Court found no right, concluding that the association at issue—the relationship among Rotary Club members—lacked the kind of intimacy that warrants constitutional protection. *Id.* at 546-47.

Plaintiffs have not pled a corollary to the Rotary Club. Even assuming that the claimed association here is with homeless sex offenders, for example, that is not an intimate association protected by the First Amendment (nor have Plaintiffs cited any case suggesting otherwise). That relationship is not imbued with the creation

13

and sustenance of the family; nor is it exclusive, small and selective in the same manner as family relationships. *See Rotary Club of Duarte*, 481 U.S. at 546; *Roberts*, 468 U.S. at 620; *Goodpaster*, 736 F.3d at 1072.

The conclusion that homeless sex offenders are not an intimate association is confirmed by the pleadings. In their Second Amended Complaint, Plaintiffs argue they do not want intimate relationships with other sex offenders, claiming that Beley is "compelled to sleep in a communal setting surrounded by other sex offenders." [55] at 11. In seeking class certification for certain homeless sex offenders denied registration, moreover, Plaintiffs represent that they are "so numerous that joinder of all members is impractical." [46] ¶ 26.

For these reasons, Count III is dismissed with prejudice.

### D. State Law Claims (Count IV)

Because Plaintiffs have stated a federal due process claim, Defendant's sole justification for dismissing the state law claims—that this Court should not exercise supplemental jurisdiction over Plaintiffs' state law claim if the federal claims are dismissed—fails. *See* 28 U.S.C. § 1367; *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

### E. Declaratory and Injunctive Relief

Pursuant to Rule 12(b)(1), Defendant argues that the claims for declaratory and prospective relief should be dismissed for lack of subject-matter jurisdiction. [53] at 1-3. Defendant does not challenge Plaintiffs' standing to seek monetary damages.

14

Standing is a jurisdictional requirement. *Apex Digital*, 572 F.3d at 443. To establish standing, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wisconsin Right to Life State PAC v. Barland*, 664 F.3d 139, 146 (7th Cir. 2011).

For declaratory or injunctive relief, a party must show a real and immediate threat of injury. The Supreme Court has held that "[past] exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Specifically, the Court found that the plaintiffs had to establish "continuing, present adverse effects" and a "real and immediate threat" of future injury to allow the court to exercise jurisdiction over the plaintiffs' requests for prospective relief. *Lyons*, 461 U.S. at 102, 105; *see also Walters v. Edgar*, 163 F.3d 430, 434-35 (7th Cir. 1998) (requiring plaintiffs to establish a non-trivial probabilistic harm of future injury).

Plaintiffs argue they have standing to seek injunctive relief by claiming that their registration status is in flux. Plaintiffs alleged that Montgomery was in custody at Cook County Jail when the Second Amended Complaint was filed (on July 25, 2013) ([46] ¶ 24); and the situation today appears to be no different. According to the recent Joint Reassignment Status Report [110] and the Illinois Sex Offender Registry, Montgomery is currently incarcerated at Cook County Jail; and

15

Plaintiffs continue to claim Montgomery will not have a home and thus be unable to register when he leaves Jail ([55] at 13-15). At present, however, Montgomery's incarceration excuses his registration obligation. 730 ILCS 150/3(c)(4).

Beley, the other Plaintiff, is registered—and apparently has been since December 2012 (*see* [46] ¶ 13)—but Plaintiffs claim there will come a time when Beley cannot find a shelter to stay in and thus will be unable to maintain his registration status. [55] at 13-15; *see also* [110], Joint Reassignment Status Report § 2(b). Plaintiffs also identify the incident where a Chicago police officer mistakenly determined that Beley was not registered. [55] at 14.

Plaintiffs request for declaratory and prospective relief lacks the real and immediate threat necessary to establish standing. Beley is in compliance with SORA and Montgomery is currently excused from compliance. As a result, multiple contingent events would have to take place for there to be standing. Plaintiffs would have to: (a) be released from Cook County Jail (for Montgomery); (b) not find a home; (c) not find a shelter; (d) seek to register while homeless; and (e) have Defendant deny registration (even though Beley apparently has been able to register since December 2012). Analogous contingencies were too speculative to create standing in *Johnson*, 2013 WL 3811545, *6; and *Derfus*, 2014 WL 2109356, *3-4; and the same is true here.

The supplemental authority Plaintiffs cite in support of standing does not involve contingencies and thus is inapposite. [87] at 3 (citing *Mueller v. Raemisch*, 740 F.3d 1128 (7th Cir. 2014)). Rather, *Mueller* found standing where the State of

Wisconsin sent frequent letters to certain former residents (the plaintiffs) warning the former residents that they would be prosecuted if they failed to register under the state's sex offender act. 740 F.3d at 1132. The injury suffered that gave rise to standing was the costs the former residents had to incur to register in response to the warning letters. *Id.* at 1133. That is a real and immediate injury—not a speculative one.

Thus, Plaintiffs lack standing to pursue declaratory and prospective relief and their prayer for this relief is stricken from the Second Amended Complaint.

## IV. Conclusion

Defendant's motion to dismiss [51] is granted in part and denied in part. Because Plaintiffs already have been granted the opportunity to amend their complaint (*see* [45]), Counts II and III are dismissed with prejudice and without leave to re-plead. In addition, Plaintiffs' prayer for declaratory and prospective relief is stricken from the Second Amended Complaint. Defendant has until March 11, 2015 to answer the non-dismissed parts of the Second Amended Complaint.

The next status hearing is scheduled for March 19, 2015 at 9:45 a.m., in Courtroom 2201, at which time the parties should be prepared to discuss the following items:

1. The discovery performed to date;

2. The general type of discovery needed, including any potential electronic discovery or bifurcated discovery;

3. A date for Rule 26(a)(1) disclosures;

4. A date to issue written discovery;

17

5. The need for, and content of, any proposed protective orders (in accordance with the Local Rules for the Northern District of Illinois);

6. A fact discovery completion date;

7. Whether there will be expert discovery, and, if so, an expert discovery completion date (including expert disclosures and depositions);

8. A date for the filing of dispositive motions; and

9. A tentative trial date.

Dated: February 17, 2015

Entered:

_____
John Robert Blakey
United States District Judge