# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL BELEY and DOUGLAS MONTGOMERY, | |
| Plaintiffs, | Case No. 12 C 9714 |
| v. | Judge John Robert Blakey |
| CITY OF CHICAGO, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Beley and Douglas Montgomery filed this putative class action against Defendant City of Chicago, challenging the Chicago Police Department's purported policy of refusing to register homeless sex offenders. Plaintiffs argue that the Department's policy contravenes the Illinois Sex Offender Registration Act ("SORA"), 750 ILCS 150, and violates their due process rights under the Fourteenth Amendment. Currently before this Court is Plaintiffs' motion for class certification [117]. The motion is granted.

## I.   Legal Standard

To obtain class certification under Federal Rule of Civil Procedure 23, Plaintiffs must satisfy the four Rule 23(a) requirements—numerosity, commonality, typicality and adequacy of representation—and one subsection of Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Here, Plaintiffs move to certify a class under Rule 23(b)(3), so they must show: (1) that issues common to the

class members predominate over questions affecting only individual members, and (2) that a class action is superior to other available adjudication methods. *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Plaintiffs bear the burden of proving each Rule 23 requirement by a preponderance of the evidence. *Id.* Failure to satisfy any requirement precludes class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

This Court has broad discretion in determining whether Plaintiffs have satisfied Rule 23. *Messner*, 669 F.3d at 811. In exercising its discretion, this Court does not presume that all well-pleaded allegations are true and can look "beneath the surface" of the Second Amended Complaint [46] to conduct the inquiries required by Rule 23. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). Although a determination on the propriety of class certification should not turn on the likelihood of success on the merits, this Court must make the factual and legal inquiries necessary to ensure that the class certification requirements are satisfied, even if that necessitates some overlap with the merits of the case. *Messner*, 669 F.3d at 823-24; *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

**II.     Facts**

Plaintiffs Michael Beley and Douglas Montgomery are convicted sex offenders who reside in the City of Chicago and are required to register under SORA. Second Amended Complaint ("SAC") ¶¶ 5-6, 16-17. Among other obligations under the

2

statute, Plaintiffs must register in person with the appropriate law enforcement agency where they live (here, the Chicago Police Department); pay an initial $100 registration fee; and provide a photograph and current address. 730 ILCS 150/3(a), 150/3(c)(6). Sex offenders lacking a "fixed residence," meaning a place where they reside for at least five days in a calendar year, must report weekly in person to their local law enforcement agency. 730 ILCS 150/2(I), 150/3(a). Failure to register carries legal consequences, including serving at least seven days in jail and paying a $500 mandatory minimum fine. 730 ILCS 150/10(a).

Plaintiffs allege that Defendant through the Chicago Police Department, in contravention of SORA and in violation of their procedural due process rights, has a policy of refusing to register "homeless" sex offenders despite its obligations to do so under the statute. SAC ¶¶ 3, 8, 15, 21. When using the word "homeless," Plaintiffs mean sex offenders who lack a residence (a physical structure, whether a house or apartment, or temporary accommodations, such as a room in a shelter) at the time of registration. Plaintiffs also brought equal protection and freedom of association claims against Defendant, SAC ¶¶ 29-30, but this Court dismissed those claims on February 17, 2015. *Beley v. City of Chicago*, No. 12-9714, 2015 WL 684519 (N.D. Ill. Feb. 17, 2015) (Dkt. 112).

Plaintiffs describe their two experiences as representative examples of Defendant executing its purported policy of refusing to register homeless sex offenders. On November 20, 2012, Beley, who was then homeless, sought to register with the Chicago Police Department. SAC ¶¶ 6-7. The Department, however,

3

refused to register Beley because he lacked identification with a "fixed address." SAC ¶ 8; Beley Dep. [122-1] at 39. As a result, from November 22 to December 11, 2012, Beley was in violation of SORA, and that violation was posted on the state police website. *Id.* ¶ 9. On December 11, 2012, the Chicago Police Department allowed Beley to register with a temporary address at a homeless shelter. *Id.* ¶¶ 10-13.

Montgomery raises similar allegations, that is, while homeless and living on Wacker Drive, Montgomery sought to register with the Chicago Police Department, but the Department turned him away, telling Montgomery that he was not going to be registered as a homeless person. SAC ¶¶ 19-21; Montgomery Dep. [122-1] at 10-12. Unable to register, around July 13, 2011, Montgomery was charged with having violated SORA (after first being arrested for ordinance violations) but was later acquitted. SAC ¶ 23; Supplemental Authority [97] ¶ 4.

Attached to Plaintiffs' class certification motion [117] are declarations from five more sex offenders who tell essentially the same story. During 2010 to 2013, the Chicago Police Department refused to register them—sometimes more than once—because, on the day they arrived at the Chicago Police Department Headquarters to register, the five sex offenders were "homeless," lacking a fixed residence. Hartage Decl. ¶ 2; Kelly Decl. ¶¶ 3, 10; McDonald Decl. ¶ 3; Mowder Decl. ¶ 2; Williams Decl. ¶ 6. Three of those five sex offenders further declare that Chicago police officers told them that they may not register as homeless and/or that

4

they were required to secure an address before registering. Kelly Decl. ¶ 2; McDonald Decl. ¶ 3; Mowder Decl. ¶ 4.

**III. Analysis**

Plaintiffs move to certify the following class:

> All persons who attempted to register under the Illinois Sex Offender Registration Act with the City of Chicago from December 6, 2010 to the date of entry of judgment and who were not permitted to register because they were homeless.

Plaintiffs argue that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(3). This Court considers each category of requirements in turn.

**A.     Rule 23(a)**

**1.     Numerosity**

To satisfy numerosity, Plaintiffs must show that the class is so large as to make joinder impractical. Fed. R. Civ. P. 23(a)(1). A class of 40 or more is generally sufficient to establish numerosity, though Courts in this District have certified classes with as few as 18 members. *Elizarri v. Sheriff of Cook County*, No. 07-2427, 2011 WL 247288, at *3 (N.D. Ill. Jan. 24, 2011); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). This Court may rely on common sense assumptions and reasonable inferences when ascertaining the size of the class. *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 300 (N.D. Ill. 2008). However, "mere speculation" or "conclusory allegations" cannot establish numerosity. *Arreola*, 546 F.3d at 797 (internal quotations omitted).

Here, Plaintiffs, counting themselves, have identified seven prospective members of the proposed class by name, and estimate from the Chicago Police

5

Department's Criminal Registration Logs (which contain a "Reason for Being Turned Away" field) that there are many more potential plaintiffs. For example, from a 11-day sliver of the class period (November 20, 2012, December 17 to 21, 2012 and April 22 to 26, 2013), the Logs show that the Chicago Police Department turned away at least 21 persons for lack of identification ("NEED ID" or "NEED UPDATED ID"). *See* Criminal Registration Logs [117]. As Montgomery's testimony confirms, homeless persons, almost by definition, will lack identification reflecting a current address because they have no address. *See* Montgomery Dep. [122-1] at 11. During that same period, the Department turned away another four persons, including Beley, for failure to provide proof of address ("PROOF OF ADD"). *See* Criminal Registration Logs [117].

The Logs corroborate the declaration testimony that Chicago police officers told sex offenders that they may not register as homeless and/or that they were required to secure an address before registering. Kelly Decl. ¶ 2; McDonald Decl. ¶ 3; Mowder Decl. ¶ 4. Moreover, Sergeant Phillip Jones, who was deposed in another case, testified that "every" registering sex offender "needs a proof of address." Jones Dep. [123] at 243.

Further proof that the Criminal Registration Logs satisfy the numerosity requirement comes from the Illinois Appellate Court. In *People v. Wlecke*, 6 N.E.3d 745, 748, 754-55 (Ill. App. Ct. 2014), the Court overturned on direct appeal a sex offender's conviction for failing to register because the offender went to the Chicago Police Department to register, but the Department incorrectly turned him away for

6

lacking valid proof of residence. The Court found that it was the Chicago Police Department's "*common practice* … to turn away sex offenders attempting to register for lack of proof of address." *Id.* at 755 n.2 (emphasis added). According to the June 14 to 18, 2010 Criminal Registration Logs, which the Court had reviewed, 117 persons reported to register during that time but 19 were turned away for failure to provide proof of address. *Id.*

In response to the Criminal Registration Logs, Defendant argues that many of the "lack of identification" and "proof of address" entries are false positives. Not all offenders who lacked identification or proof of address were homeless, and the Chicago Police Department turned away some, perhaps many, of these sex offenders for legitimate reasons under SORA that do not bear on any purported policy of refusing to register homeless sex offenders.

This argument is well taken, but it does not defeat class certification. The numerosity threshold is satisfied even if only a small percentage of sex offenders turned away for "lack of identification" and "proof of address" in fact qualify under the class definition. The sampling of Criminal Registration Logs in this case and in *Wlecke* reveal 44 offenders denied for these two reasons over 16 days, or almost 3 per day. Projected out over the entire class period, which dates back to December 6, 2010, and even recognizing that some offenders were turned away by the Chicago Police Department more than once, it is reasonable for this Court to infer that there is a potential pool of plaintiffs in the hundreds, if not more. In light of the declaration testimony that Chicago police officers said they did not register

7

homeless sex offenders, it is reasonable for this Court to infer from the record that a significant, even if small, percentage of sex offenders seeking to register will fit the class definition. The Chicago Police Department turned these sex offenders away because they lacked a residence. With seven prospective class members already identified, that is more than sufficient to satisfy the numerosity requirement.

Without citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), Defendant further argues that the false positives show that the proposed class is not ascertainable because it would be burdensome for the parties to identify class members by determining the reason for each and every one of the aforementioned denials. This argument, which incorrectly heightens the ascertainability requirement under Rule 23 and finds its genesis in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), was rejected by the Seventh Circuit's recent decision in *Mullins*. *Mullins* teaches that the concerns underlying Defendant's argument (that is, creating a reliable and administratively feasible way to determine whether a particular person is a class member) may be valid, but they should be addressed through tailored case management and not by denying class certification at the outset. *Mullins*, 795 F.3d at 657-58, 663-65, 672. For all of these reasons, the numerosity requirement is satisfied.

### 2. Commonality

To meet the commonality requirement, Plaintiffs must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common question of law or fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 131

8

S. Ct. 2541, 2556 (2011). While the Rule is phrased in terms of questions, what matters for class certification is the capacity of a classwide proceeding to generate "common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores*, 131 S. Ct. at 2551 (emphasis in original and internal quotations omitted); *accord Chicago Teachers Union, Local No. 1 v. Board of Education of City of Chicago*, 797 F.3d 426, 436-38 (7th Cir. 2015). The "critical point" is "the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (emphasis in original and internal quotations omitted). Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, no common answers are likely to be found. *Id.*

Here, a class action likely will generate common answers to at least three questions of fact and law, which are common to the proposed class and which will drive the resolution of this case:

1. Does the Chicago Police Department have a policy of refusing to register homeless sex offenders?

2. Does that policy violate the sex offenders' due process rights under the Fourteenth Amendment?

3. Does that policy violate SORA?

With respect to the second question in particular, as shown by this Court's analysis of Plaintiffs' due process claim at the motion to dismiss stage, *see Beley*, 2015 WL 684519, at *2-4, a classwide proceeding will generate a common answer to whether, for example, Defendant has adequate procedures in place to protect Plaintiffs and the class from the deprivation of their liberty interest. Foreshadowing the present

9

commonality analysis, in fact, this Court drew from the analysis of two similar cases in this District. The cases were filed by other sex offenders, yet also challenged the same purported Chicago Police Department policy. *Beley*, 2015 WL 684519, at *4, citing *Derfus v. City of Chicago*, 42 F. Supp. 3d 888 (N.D. Ill. 2014), and *Saiger v. City of Chicago*, 37 F. Supp. 3d 979 (N.D. Ill. 2014). *Derfus* and *Saiger* are objective proof of the existence of common answers.

Defendant responds that this Court will have to examine the unique facts of each interaction between the Chicago Police Department and the homeless sex offenders turned away, such as which police officer was on duty and each offender's living situation. That is not the case. *Chicago Teachers Union* instructs that a City-wide policy is appropriate for class challenge even when some decisions in the chain of acts challenged are exercised by employees at the bottom with discretion. *Chicago Teachers Union*, 797 F.3d at 436-38. In those instances, the exercise of discretion by employees at the bottom are influenced by the City-wide policy. *Id.*

Here, Plaintiffs allege that Chicago police officers uniformly targeted one component of the sex offender's living situation—whether he had a residence at the time of registration. Even assuming that the interactions between individual Chicago police officers and homeless sex offenders varied, the Chicago Police Department's purported policy nonetheless shaped those interactions, resulting in the denial of registration. For these reasons, Courts in this District certify classes challenging an alleged discriminatory policy, *see, e.g.*, *Phipps*, 249 F.R.D. at 301 (collecting cases), and this is yet another case.

### 3. Typicality

The commonality and typicality requirements of Rule 23(a) tend to merge. *Spano v. The Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011). In analyzing the typicality requirement, there must be enough congruence between the named representatives' claim and that of the unnamed class members to warrant allowing the named representatives to litigate on behalf of the group. *Id.* Generally, a claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members," and it is based on the same legal theory. *Oshana*, 472 F.3d at 514 (internal quotations omitted). Although there may be factual distinctions between the claims of the named representatives and those of other class members, the former's claims must share the "same essential characteristics as the claims of the class at large." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted).

Here, Plaintiffs argue, and this Court agrees, that their claims are based on the same course of conduct that affected all members of the proposed class: the Chicago Police Department's purported policy of refusing to register homeless sex offenders. In this respect, Beley and Montgomery's allegations align with the declarations from the five other cited sex offenders. Each was denied the opportunity to register because he lacked a residence, such as a shelter, but could register when he secured a residence. SAC ¶¶ 6-8, 10, 13, 19-21; Hartage Decl. ¶ 2; Kelly Decl. ¶¶ 3-4, 10; McDonald Decl. ¶¶ 3-4; Mowder Decl. ¶¶ 2-3, 6; Williams Decl. ¶ 6.

Citing another SORA case, *Johnson v. City of Chicago*, No. 12-8594, 2013 WL 3811545 (N.D. Ill. July 22, 2013), Defendant responds that individual issues surrounding each offender's criminal, residential and registration histories prevent a finding of typicality. But variation on the margin does not defeat the essential characteristic of each offender's claim, *see Muro,* 580 F.3d at 492, and this Court finds nothing in *Johnson* to defeat Plaintiff's class certification motion. Unlike in *Johnson*, 2013 WL 3811545, at *11-14, where the sex offenders conceded that the Chicago Police Department did not have a uniform policy for deciding when to waive the $100 registration fee, here, Plaintiffs maintain that there was a singular Chicago Police Department policy. The typicality requirement is satisfied.

    **4.**    **Adequacy of Representation**

To satisfy the adequacy of representation requirement, Plaintiffs must show that they will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In assessing adequacy, this Court must determine whether Plaintiffs have: (1) antagonistic or conflicting claims with other members of the class; (2) a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) counsel who is competent, qualified, experienced and able to vigorously conduct the litigation. *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 613 (N.D. Ill. 2009). Defendants do not challenge this element, and this Court finds from its own independent review of the record that Plaintiffs have satisfied their adequacy of representation burden. This Court, in particular, sees no reason to doubt the adequacy of Plaintiff's counsel in this case. *See, e.g.*, *Streeter*, 256 F.R.D. at 614

(finding the same counsel to be fit to serve as class counsel); *Jackson v. Sheriff of Cook County*, No. 06-493, 2006 WL 3718041, at *5 (N.D. Ill. Dec. 14, 2006) (same).

### B. Rule 23(b)(3)

#### 1. Predominance

The predominance requirement of Rule 23(b)(3) tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement, although similar to questions of commonality and typicality, is more demanding than either of those Rule 23(a)(2) requirements. *Id.* at 623-24. When a proposed class challenges a uniform policy, as here, the validity of that policy tends to be the predominant issue in the litigation. *Streeter*, 256 F.R.D. at 614; *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008). If individual issues predominate, however, a class action is not a superior method for adjudication, and certification should be denied. *Szabo*, 249 F.3d at 675.

Here, Defendant argues that individual issues regarding each sex offender's attempts to register preclude a finding of predominance. This Court disagrees for the reasons stated above. In short, Plaintiffs' claims turn on the uniform manner in which the Chicago Policy Department purportedly refused to register homeless sex offenders regardless of their individual circumstances, and that issue predominates over any individual issues. Likewise, in *Streeter*, 256 F.R.D. at 614, the Court collected cases finding the predominance requirement satisfied when the proposed class challenged a uniform policy. Similar to here, the uniform policy in *Streeter*

13

was the Sheriff of Cook County's group strip search policy for male detainees returning to Division 5 of the Cook County Jail after court proceedings. *Id.* at 611, 614. The Chicago Police Department's purported registration policy thus predominates in this litigation.

Defendant also argues that damages will be individualized. Defendant does not substantiate that claim, and it is premature for this Court to forecast the nature of class damages. In any event, if damages turn out to be individualized, it may be appropriate for this Court under Rule 23(c)(4) to address liability on a classwide basis and damages on an individual basis. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800-01 (7th Cir. 2013) (recommending this approach as opposed to denying class certification). This bifurcated approach is "very common." *Otero v. Dart*, 306 F.R.D. 197, 207 (N.D. Ill. 2014) (internal quotations omitted); *see also Messner*, 669 F.3d at 815 (collecting cases). Individualized damages thus are not a bar to class certification at this point in the proceedings.

### 2. Superiority

The second requirement under Rule 23(b)(3), superiority, requires Plaintiffs to show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). A class action is superior when, as here, "the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

Here, the efficiency in the class action mechanism derives from having to answer the common questions of fact and law just once. This is a real (and not just hypothetical) savings in the context of the factual and legal issues brought in this case, as at least two other SORA cases already have been filed in this District and already have engendered overlapping factual and legal analysis. *See Saiger v. City of Chicago*, No. 13-5590 (N.D. Ill.); *Derfus v. City of Chicago*, No. 13-7298 (N.D. Ill.). With regard to superiority, Defendant simply repeats its argument that the claims here are fact intensive. That argument already has been considered and rejected. The superiority requirement is satisfied.

## IV. Conclusion

Plaintiffs' class certification motion [117] is granted. This Court certifies the following class:

> All persons who attempted to register under the Illinois Sex Offender Registration Act with the City of Chicago from December 6, 2010 to the date of entry of judgment and who were not permitted to register because they were homeless.

This Court designates Plaintiffs Michael Beley and Douglas Montgomery as the class representative. This Court appoints Thomas G. Morrissey and Patrick W. Morrissey of Thomas G. Morrissey Ltd. and Kenneth N. Flaxman and Joel A. Flaxman of Kenneth N. Flaxman P.C. as class counsel.

This case is set for a status hearing on December 10, 2015 at 9:45 a.m. in Courtroom 1725. In light of this Court's ruling, the parties are directed to meet and confer regarding any current settlement possibilities prior to the December 10, 2015 status hearing.

Dated: December 7, 2015

                                              Entered:

                                              United States District Judge